**STATE of Minnesota, Respondent,**

v.

**Rita Faye SCHENK, Appellant.**

No. C9-88-709.

Court of Appeals of Minnesota.

Aug. 2, 1988.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., and Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

Alan D. Margoles, St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a dispositional and durational upward departure from the presumptive sentence under the Minnesota Sentencing Guidelines. We affirm.

## FACTS

Appellant Rita Faye Schenk pleaded guilty to receiving and concealing stolen property valued in excess of $2,500.00 in violation of Minn.Stat. § 609.53, subd. 1(1) (1986). In her plea, appellant admitted to a continuing course of conduct from November 1986 until her arrest in March 1987. The stolen property consisted mostly of sterling silver and jewelry taken in several burglaries in St. Paul. Appellant is a 52–year–old woman who is a self-employed jewelry and antique dealer. She has several medical conditions and previously had never been charged with a crime.

The presumptive sentence for this level VI offense with appellant's criminal history score of zero is a stayed sentence of 21 months. The state moved for a dispositional and durational upward departure of 42 months executed. Appellant was sentenced to an executed prison term of 27 months.

The court listed three aggravating factors in its departure report:

There were multiple victims, at least nine individuals and the offenses occurred over an extended period of time from at least November, 1986, through March of 1987.

This was a very sophisticated fencing operation of which Rita Schenk participated as the buyer and seller of stolen merchandise. The defendant had numer-

ous and diverse markets available for moving the stolen items from the black market into the legitimate markets of antiques and used jewelry.

Also, the use of her position—she ran a reputable antique and jewelry business—defendant put herself in a position of trust and esteem in the community while at the same time participating in a very extensive and sophisticated fencing operation.

## ISSUE

Did the trial court abuse its discretion in departing upward dispositionally and durationally from the presumptive sentence?

## ANALYSIS

■ A trial court has broad discretion and may depart from the presumptive sentence when there are substantial and compelling circumstances present. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981); *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981); *see also* Minnesota Sentencing Guidelines II.D. A reviewing court generally will not interfere with that discretion unless it has a "strong feeling" that the sentence is disproportionate to the offense. *State v. Anderson*, 356 N.W.2d 453, 454 (Minn.Ct.App.1984) (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981)).

■ The trial court in this case listed three aggravating factors for both its durational and dispositional departure. A court is not barred from using the same aggravating circumstances to justify both a dispositional and durational departure. *Anderson*, 356 N.W.2d at 454 (citing *State v. Lalli*, 338 N.W.2d 419, 421 (Minn.1983)). "Dispositional" refers to whether or not the sentence should be executed, and factors to consider generally reflect on a defendant's character. "Durational" refers to the length of a sentence, and factors to examine involve the nature of the crime itself. *See* Minnesota Sentencing Guidelines II.C.01 comment.

*Dispositional Departure*

██ Appellant argues that because she is amenable to probation and is not a "bad" person her presumptively stayed sentence was improperly executed. Unamenability to probation is frequently the justification for a dispositional departure. *See, e.g., State v. Hagen,* 317 N.W.2d 701, 703 (Minn. 1982); *State v. Doherty,* 419 N.W.2d 624, 628 (Minn.Ct.App.1988); *State v. Fett,* 414 N.W.2d 783, 784 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987); *State v. Nesler,* 376 N.W.2d 745, 746 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986). In this case, however, the state did not seek an upward dispositional departure based on appellant's unamenability to probation. Indeed, it is undisputed that appellant lacks a prior record and has the support of family and friends, factors often cited as indicia of amenability to probation. *See State v. Trog,* 323 N.W.2d 28, 31 (Minn. 1982).

The state instead requested an upward dispositional departure based on the fact that appellant's conduct was more serious than that usually associated with the offense for which she pleaded guilty. *See State v. Gartland,* 330 N.W.2d 881, 883 (Minn.1983) (where defendant's conduct "was aggravated in the extreme," dispositional departure was justified). Prior cases have upheld a dispositional departure based on facts similar to those found here. In *State v. Hagen,* 361 N.W.2d 407, 414 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 18, 1985), the defendant's long-term and sophisticated planning in committing arson justified execution of a presumptively stayed sentence; this is similar to the trial court's finding that appellant's operation of a sophisticated fencing operation over a period of time aggravated her conduct. In *State v. Lalli,* 338 N.W.2d 419, 421 (Minn.1983), the court found that the defendant's conduct in committing bribery was aggravated by the fact that defendant utilized his position as a supervisor to facilitate the commission of his crime; this resembles the trial court's finding here that appellant's use of her position as a reputable antique dealer aggravated her conduct. *See also State v. Finbraaten,* 363 N.W.2d

473, 475 (Minn.Ct.App.1985) (upward dispositional and durational departure upheld where loss was substantially greater than statutory minimum loss, considerable planning was involved, and defendant exploited his position as handyman to a 97–year–old woman), *pet. for rev. denied* (Minn. Apr. 18, 1985). Given these cases, we cannot conclude that the trial court abused its discretion in ordering sentence executed.

*Durational Departure*

██ Appellant also contends that the upward durational departure of six months was an abuse of discretion. She correctly points out that receiving stolen property is not a major economic offense within the meaning of Minnesota Sentencing Guidelines II.D.2.b.(4). *See State v. Carr,* 361 N.W.2d 397, 402 (Minn.1985). However, where the crime of receiving stolen property has been committed in a particularly serious way, an upward durational departure may still be justified. *Id.*

In *Carr,* the supreme court upheld the upward durational departure with the following reasoning:

> [O]ne could argue that the Guidelines themselves have already taken into account the fact that defendant is a fence in determining his presumptive sentence. However, the state's evidence did not just establish that defendant was in the business of fencing stolen property. It also established that instead of simply paying money for stolen property he also was willing to pay in drugs. * * * That fact renders his conduct more serious than the conduct of the typical fence. Considering that fact, along with other facts, including that there were multiple victims and that the offenses occurred over a period of time, we conclude that the durational departure was not unjustified.

*Id.* Similarly, the fact that appellant ran a reputable business and used her position to engage in an extensive and sophisticated fencing operation renders her conduct more serious than that of the typical fence. When this fact is considered along with the other factors cited by the trial court, in-

cluding the involvement of multiple victims and conduct occurring over an extended period of time, it cannot be said that the upward durational departure was unjustified.

The trial court's reasons for the upward departure in this case are also similar to those used to justify the 26–month upward durational departure in *State v. Horoshak*, 415 N.W.2d 404 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988). The defendant in *Horoshak* was convicted of six counts of receiving stolen property, one count of theft by altering vehicle numbers and three counts of theft by possessing property with knowledge that vehicle identification numbers had been altered. In citing the aggravating factors which justified an upward durational departure, the court found that "the operation conducted by the defendant was 'sophisticated and well-planned criminal activity' and that defendant had been conducting a major fencing operation which adversely affected many victims." *Id.* at 409.

## DECISION

The sentence imposed is affirmed.